**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| LORALIE NOLET, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>NATIONWIDE CREDIT, INC.,<br><br>Defendant. | Case No.: 17-cv-1400<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Loralie Nolet is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Nationwide Credit, Inc. ("Nationwide") is a foreign corporation with its principal offices located at 1000 Abernathy Road, Suite 200, Atlanta, GA, 30328.

6. Nationwide is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Nationwide is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Nationwide is a debt collector as defined in 15 U.S.C. § 1692a.

## FACTS

8. On or around January 4, 2017, Nationwide mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Chase Bank USA, N.A." A copy of this letter is attached to this complaint as Exhibit A.

9. Upon information and belief, the alleged debt that Nationwide was attempting to collect was a consumer credit card account, used only for personal, family, or household purposes.

10. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

11. Upon information and belief, Exhibit A is a form debt collection letter used by Nationwide to attempt to collect alleged debts.

12. Exhibit A is dated January 4, 2017.

13. Upon information and belief, Exhibit A was actually sent to Plaintiff on January 4, 2017

14. On or around February 4, 2017, Nationwide mailed another debt collection letter to Plaintiff regarding the alleged debt owed to Chase. A copy of this letter is attached to this complaint as Exhibit B.

15. Upon information and belief, Exhibit B is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit B is also a form debt collection letter used by Nationwide to attempt to collect alleged debts.

17. Exhibit A is dated February 4, 2017.

18. Upon information and belief, Exhibit B was actually sent to Plaintiff on February 4, 2017, exactly 30 days after Exhibit A was sent to Plaintiff.

19. Exhibit B thus misstates the amount of time intervening between Nationwide's transmittal of Exhibit A and Exhibit B to Plaintiff.

20. Moreover, Exhibit B falsely and misleadingly implies that the 30-day FDCPA validation period has already expired when Nationwide mailed Exhibit A. The validation period runs from the date that the consumer *receives* the letter, not when the debt collector mails it. Thus, the validation period had not expired when Nationwide sent Exhibit B to Plaintiff.

21. On or about April 14, 2017, Nationwide mailed yet another debt collection letter to Plaintiff regarding the alleged debt owed to Chase. A copy of this letter is attached to this complaint as Exhibit C.

22. Upon information and belief, Exhibit C is another form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

23. Upon information and belief, Exhibit C is also a form debt collection letter used by Nationwide to attempt to collect alleged debts.

24. Exhibit C contains a settlement offer in the amount of $7,366.01

25. Additionally, Exhibit C includes payment schedule for the settlement offer as follows:

You can settle this account according to the payment arrangement shown in the table below:

| Payment No. | Payment Recieved by NCI | Payment Amount | | Payment No. | Payment Recieved by NCI | Payment Amount |
|---|---|---|---|---|---|---|
| 1 | 04/27/2017 | $3,684.00 | | | | |
| 2 | 05/30/2017 | $334.73 | | | | |
| 3 | 06/27/2017 | $334.73 | | | | |
| 4 | 07/27/2017 | $334.73 | | | | |
| 5 | 08/28/2017 | $334.73 | | | | |
| 6 | 09/27/2017 | $334.73 | | | | |
| 7 | 10/27/2017 | $334.73 | | | | |
| 8 | 11/27/2017 | $334.73 | | | | |
| 9 | 12/27/2017 | $334.73 | | | | |
| 10 | 01/29/2018 | $334.73 | | | | |
| 11 | 02/27/2018 | $334.73 | | | | |
| 12 | 03/27/2018 | $334.71 | | | | |

This offer is contingent upon NCI receiving the payment pursuant to the payment schedule outlined in this letter.

26. The settlement offer in Exhibit C thus falsely states or implies that the settlement offer is valid only if the first payment is received in accordance to the schedule listed in above referenced table.

27. Upon information and belief, Nationwide had authority from Chase to settle consumers' accounts for 30% of the amount owed, or less, at any time.

28. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

29. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

30. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word

> "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

31. Nationwide did not use the safe harbor language in Exhibit C.

32. Upon information and belief, the deadline in Exhibit C to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

33. Plaintiff was confused by Exhibits A-C.

34. The unsophisticated consumer would be confused by Exhibits A-C.

35. Plaintiff had to spend time and money investigating Exhibits A-C and the consequences of any potential responses to Exhibits A-C.

36. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A-C.

37. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill.

Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

38. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

**COUNT I - FDCPA**

39. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

40. Exhibit B falsely represents the amount of time which intervened between the transmittal of that letter and Defendant's first letter to Plaintiff, Exhibit A.

41. Exhibit B falsely implies that the FDCPA validation period had expired when it had not.

42. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

**COUNT II - FDCPA**

43. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

44. Exhibit C includes false statements to the effect that the settlement offer is for a limited time only.

45. Upon information and belief, the creditor and/or Nationwide would settle Plaintiff's and class members' alleged debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

46. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## CLASS ALLEGATIONS

47. Plaintiff bring this action on behalf of two proposed classes.

48. Class I (the "False Time-frame" class) consists of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, and (c) and who were sent a collection letter in the form represented by Exhibit B to the complaint in this action, less than 31 days after the Exhibit A was mailed, (d) seeking to collect a debt for personal, family, or household purposes, (e) between October 12, 2016 and October 12, 2017, inclusive, (f) that was not returned by the postal service.

49. Class II (the "Limited-time Settlement" class) consists of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibit C to the complain in this action, (c) seeking to collect a debt for personal, family, or household purposes, (d) between October 11, 2016, and October 11, 2017, inclusive, (e) that was not returned by the postal service.

50. The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

51. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members.

The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10).

52. Plaintiff's claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

53. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

54. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

55. Plaintiff hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 12, 2017

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000

(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com